### JOHN MILLS *vs.* CALEB RICE & others.

Promissory notes made to a bank in payment of notes discounted by the bank for the maker of these notes, in violation of the Rev. Sts. c. 36, § 58, (which declare that any such discount, not made payable on demand, " shall be so far void that the bank shall not be entitled to recover the amount thereof from the borrower, or from any other person," and that any bank violating this section shall be liable to a penalty,) cannot be enforced by the bank.

A debtor, who has conveyed land in trust to secure the payment of all notes of certain third persons indorsed by him, and to reconvey to him any portion remaining, may, after paying all such notes except notes discounted by a bank in violation of the Rev. Sts. c. 36, § 58, in payment for which he has since given his own notes, maintain a bill in equity against his trustee for a reconveyance, notwithstanding the interposition of a claim by the bank for payment of such new notes out of the trust fund.

BILL IN EQUITY for a reconveyance of real estate conveyed by the plaintiff on the 17th of June 1850 to the defendants Caleb Rice, Erasmus D. Beach and Reuben A. Chapman, upon the following trusts : " That whereas I am under liabilities to various parties as the indorser and surety of the firm of Dean, Packard & Mills, and also as the indorser and surety of Miles D. Wells, and the said Dean, Packard & Mills and the said Wells are unable to meet the obligations which I am thus liable to pay, and I am desirous to provide means to secure my creditors, and to meet all my engagements, as speedily as I can : Now therefore the said grantees are to sell and dispose of said real estate as

soon as may be, and so far as sales thereof may be necessary in such parcels and for such sums as they may judge proper, and to apply the avails to the discharge of my said liabilities; and when said liabilities are settled and discharged, they are to reconvey to me and my heirs, or to such persons as I may in writing appoint, whatever portion of said real estate may remain in their hands."

The bill alleged that at the time of the execution and delivery of this conveyance the plaintiff was legally liable as the indorser or surety of Dean, Packard & Mills, upon certain notes enumerated, and also as the indorser or surety of Miles D. Wells, upon certain other notes enumerated, and that all those notes had since been paid; yet said trustees, though requested, had refused to reconvey the portion of the land still so held by them.

The trustees, in their answer, admitted the conveyance of the land to them, the payment of the notes specified in the bill, the plaintiff's request to them, and their refusal to reconvey; and set up, as the reasons for such refusal, that at the time of the execution of the conveyance they were notified by the plaintiff that the Western Bank held notes to an amount exceeding $15,000, given to the bank by Dean, Packard & Mills, and indorsed by the plaintiff; that on the 21st of June 1850 they were notified by the bank of an agreement in writing whereby the plaintiff agreed to give his own notes to the bank for those which he had so indorsed, payable at certain extended times, and to be paid by a sale of the land so conveyed in trust, unless previously discharged by the proceeds of certain collateral securities; that the trustees assented to this agreement, and the plaintiff, in compliance therewith, gave the bank his own notes, part of which had since been paid, and the residue, amounting to $8,000, were now held by the bank; that the bank had since requested the trustees to execute the trust according to the terms of the trust deed and of said agreement, and tendered them a bond of indemnity for so doing; but the trustees, being informed that the plaintiff refused and denied his obligation to pay said notes, had delayed to carry out said trusts, and were unwilling to incur the responsibility of carrying them out, unless under the advice and direc-

tion of a court of equity; and submitted the question of their duty in the premises to the decision of the court.

The plaintiff then filed an amended bill, averring that he was informed that the Western Bank pretended that he was indebted to them as indorser of sundry notes of Dean, Packard & Mills, held by the bank, and denying that he was indebted to them on said notes, or in any manner whatever; and praying for a discovery by the bank of the number, amount, dates, and times of payment of said notes, and whether they were not all given to them as collateral security for the payment of certain notes of Dean, Packard & Mills, of like amounts, indorsed by the plaintiff, and which had been discounted by the bank under an arrangement which had been declared by this court to have been illegal. [*Western Bank* v. *Mills*, 7 Cush. 539.]

The Western Bank then answered, annexing a schedule of the notes of the plaintiff, held by them; denying that they were given by the plaintiff as collateral security for the payment of notes of Dean, Packard & Mills; and averring that they were given in payment of certain notes of Dean, Packard & Mills, on which the plaintiff was indorser, under and in performance of the agreement of the 21st of June 1850; that on the 7th of June 1850 the plaintiff executed a mortgage of his real estate to the bank, as security for the performance of his liability as indorser on the notes of Dean, Packard & Mills then due to the bank, or which might be given to the bank by him, instead of those then due, by renewal or otherwise; and on the 8th of June authorized the bank to sell the mortgaged estate; and on the 14th of June, for his own advantage, being desirous that the mortgage should be discharged, wrote a letter to the bank, proposing that " there should be but one transaction, embracing the indorsed paper of Dean, Packard & Mills and M. D. Wells," and, pursuant to the arrangement so proposed, the plaintiff and the trustees on the 21st of June executed and delivered the agreement and the notes of that date, as above stated, in payment of the notes of Dean, Packard & Mills, and thereby induced the bank to discharge said mortgage.

And the bank admitted " that the notes of Dean, Packard

Mills *v.* Rice & others.

& Mills aforesaid were discounted under an arrangement or agreement which the supreme judicial court, as a court of law, has declared to have been so far, and so far only, in violation of a law of this commonwealth, that this defendant is restrained from maintaining an action at law thereon." But the bank averred that said arrangement or agreement was made by Isaac Mills, who was the financial manager of the affairs of Dean, Packard & Mills, and was the son of the plaintiff, and that the plaintiff, with a full knowledge of the terms of said proposed arrangement and agreement, advised and encouraged Isaac Mills to make and complete said arrangement or agreement, and to obtain the money of the bank upon the terms thereof, and offered to indorse and did indorse the notes which were to be given in carrying out said arrangement or agreement, and made and executed the other agreements before set forth, and executed and gave his said notes in payment of the said notes of Dean, Packard & Mills. Wherefore, the bank averred, " both equity and a good conscience demand that the plaintiff should return to this defendant the money they obtained by his advice and agency, and to the repayment of which he has in so many forms, at so many times, given his written pledge and promise."

The plaintiff filed a general replication. And a hearing was had before *Merrick*, J., at which there was proof of so much of the answer of the Western Bank as is above set forth. The case was now submitted to the court upon the bill and answer and evidence, with an agreement that the court might draw such inferences from the evidence as a jury might.

This case was argued at Boston on the 4th of February 1857, before all the judges except the chief justice.

*H. Vose*, for the plaintiff.

*S. Bartlett*, for the defendants. 1. It appears by the proofs in this case, to use the language of the court in the suit formerly brought by the plaintiff against the Western Bank, that " the proposed arrangement was made known to him, and he assented to it; without his concurrence it could not have been made, and so he was a party to it." *Mills* v. *Western Bank*, 10 Cush. 23.

2. Such being the fact, then, without adverting to the new

notes and the conveyance in trust, the plaintiff could not have maintained a bill to have the original notes surrendered ; even upon the terms usually imposed by a court of equity in cases of illegal contracts. In cases of illegal contracts, whether *mala prohibita* or *mala in se*, the court will not interpose between the parties, to grant any relief; but acts on the principle of *par delictum.* The exceptions are cases of usury and gaming contracts, on grounds of public policy, and where the contract is absolutely and for every purpose wholly void. 1 Story on Eq. §§ 293, 301, 303. But in this case, the statute only declares it to be void, so far as the remedy is concerned, and protects the public by a penalty. Rev. Sts. c. 36, § 58. " The provision, that it shall be so far void, carries an inevitable implication that it is not void in all respects." 10 Cush. 24.

3. The notes were given under a condition of the law and facts, that makes them unimpeachable by the plaintiff. To hold that a contract, which the statute does not declare to be void but only deprives the party of a remedy upon it, cannot furnish any consideration for a new contract, and prohibits any action upon such new contract voluntarily made by a party conscious of the original taint, would be to give a very extended construction to a penal statute. Contracts not declared absolutely void are capable of ratification, so as to have an *ex post facto* validity. 1 Story on Eq. § 306. And this case falls within the rule, that " an express promise can revive a precedent good consideration, which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law." 3 Bos. & Pul. 252, *note. Way* v. *Sperry,* 6 Cush. 238. *Dodge* v. *Adams,* 19 Pick. 429.

4. But if there is no valid distinction between original contracts so far void by statute that one party is left without remedy, and new contracts founded upon the considerations of the old ones, yet here, by agreement of all parties, property has been placed in the hands of trustees, to satisfy the new contracts. Upon those contracts, the trustees would be liable at the suit of the bank, and could not set up the supposed illegality in defence of such a suit. *Tenant* v. *Elliott,* 1 Bos. & Pul. 3. *Sharp* v.

*Taylor*, 2 Phil. Ch. 801. If the trust had been executed and the money paid, it could not have been recovered back. *Mills* v. *Western Bank*, 10 Cush. 22. And equity will always consider that as done which the parties have agreed should be done. Besides; "providing that the bank can maintain no action to recover it implies that if they obtain payment by the voluntary act of the borrower, or of any other person, without the aid of the law, it is not received on a void contract." 10 Cush. 24. The original contract, therefore, furnishes a good consideration for new voluntary security, if not for new voluntary notes.

5. Where a court of equity will interfere at all at the suit of a plaintiff *in pari delicto*, still he cannot have its aid to retain the money received from the defendants under the original arrangement, and yet claim to set aside a conveyance given by way of security. The most that the court will do is to place the parties *in statu quo*. He who seeks equity must do equity. Adams on Eq. 191. 1 Story on Eq. § 301. *Rogers* v. *Rathbun*, 1 Johns. Ch. 367. *Fanning* v. *Dunham*, 5 Johns. Ch. 122. *Morgan* v. *Schermerhorn*, 1 Paige, 544. *Holbrook* v. *Sharpey*, 19 Ves. 131.

MERRICK, J. The only parties before the court, who have any substantial interest in the questions arising upon the bill and answers, are the plaintiff and the Western Bank. The defendants Rice, Beach and Chapman are mere trustees. They do not pretend to have any personal right to the estate which is the subject of controversy. They hold it only in trust under a deed from the plaintiff; and they submit the question of their duty in relation to it entirely to the decision of the court.

It is agreed that, at the time when this suit was commenced, there were no outstanding liabilities of the plaintiff, to which the avails of the real estate, if it should be sold, could be applied, unless he was legally holden to the payment of the notes which he had given in the place of and as a substitute for those of Dean, Packard & Mills, upon which he had been an indorser. And as to those notes of Dean, Packard & Mills, it is conceded that they were made in pursuance of such an unlawful arrangement and agreement that the payees are precluded from maintaining

any action, and from recovering the amount nominally due thereon, from either the principal or indorser.

But it is urged, in the argument of the counsel for the bank, that these substituted notes of the plaintiff are now held by the bank by an unimpeachable title; that they were made upon a legal and sufficient consideration, and consequently that a claim of payment cannot be successfully resisted. This is the renewal of an argument upon a question which has been already deliberately considered and determined. An action was brought by the bank against the plaintiff upon one of these notes, and the circumstances and consideration under and upon which they were made being disclosed, it was held 'that the action could not be maintained, and judgment was rendered for the defendant. *Western Bank* v. *Mills*, 7 Cush. 539. We see no cause for disturbing or modifying that decision. It is reasonable in itself, because, by attaching the consequences of an illegal agreement to all the subsequent transactions of the parties, connected with or dependent upon such a stipulation, it tends to maintain the law and prevent its violation ; and it is, moreover, fully justified by authority. The principle upon which it rests was briefly, but satisfactorily, stated by Bayley, J. in the case of *Amory* v. *Meryweather*, 4 D. & R. 92. " The expedient resorted to, of changing the security, will make no difference if the original consideration is void."

It has been suggested that this principle is not applicable to the present case, where the notes of the plaintiff were taken in exchange for those of Dean, Packard & Mills ; because the latter were not absolutely void. But we think this distinction is unimportant and immaterial. The notes of Dean, Packard & Mills were given in consummation of an unlawful contract, and for that cause they were, in the hands of the payee, utterly worthless; for the statute expressly declares, that every loan or discount made contrary to its provisions shall be so far void, that "the bank shall not be enabled to recover the amount thereof from the borrower, or from any other person ; " and, in addition to this disability, " shall forfeit the sum of five hundred dollars." Rev. Sts. *c.* 36, § 58. Notes, thus invalid on account of the

unlawful agreement in which they originate, can afford no good and legal consideration for any subsequent promise or contract for which they may be exchanged.

But it is further contended, that the plaintiff is not entitled to the aid of a court of equity in the recovery of his estate, even if the notes given by him stand upon the same footing as those of Dean, Packard & Mills, upon which he had been an indorser; because in the original transaction he was, jointly with the lender of the money, a violator of the law, and equally with him in fault. If this action were directly between the parties to that transaction, and the plaintiff were seeking a remedy upon or through the contract into which they had mutually entered, the principle of *par delictum* would undoubtedly apply. They would then be left in the condition in which they had respectively and voluntarily placed themselves. The payment of the notes could not be enforced on the one side, against the will of the maker; but if they had been paid, no action could be maintained on the other to recover back the money. For a similar reason, if lands are conveyed in conformity with, or in satisfaction of an illegal contract, the title of the grantee cannot be defeated or disturbed. *Thomson* v. *Thomson*, 7 Ves. 473. *Tenant* v. *Elliott*, 1 Bos. & Pul. 3. *Sharp* v. *Taylor*, 2 Phil. Ch. 818. *Worcester* v. *Eaton*, 11 Mass. 368.

But this is altogether a different case. No payment has been made, and no lands have been conveyed by the plaintiff to the bank, in satisfaction of the notes he has given. The plaintiff institutes no proceedings against the bank, makes no demand upon them, nor attempts to reclaim any thing to which they have acquired a title. He makes his demand only upon the trustees; and he calls upon them to restore to him his estate, simply upon the ground that he is entitled to its restoration, according to the provisions and stipulations in the deed under which their title to it is holden. By the terms of that deed, they are bound to reconvey it to him whenever he is fully relieved from all his designated liabilities. He shows them that the conditions in the deed have been fully complied with, and that he is no longer subject to any of the liabilities mentioned in it No action can

be maintained against him, and nothing can be recovered of him. It is thus made apparent that the trust, in relation to all the obligations which devolved upon them, has been fully accomplished.   And therefore, as the trustees make no personal claim, and assert no right to the estate in themselves, there is no reason why they should not surrender and release it to the plaintiff, unless some valid objection can be interposed by the Western Bank.

It may be considered certain that no such objection can come from that quarter.   It is sufficient to say, in the first place, that it has been judicially determined, and for reasons which, upon reëxamination, appear to be perfectly satisfactory, that the bank has no claims upon the plaintiff, which can be enforced; and that therefore it is in no situation to move in this matter at all. But if it were an open question, it would not be possible, upon the facts disclosed, to come to any other result.   The trustees, though they have been furnished by the bank with a bond of indemnity, the adequacy of which, to protect them against loss, has not been brought into question, have refused to yield to its request, that they should sell the estate, or otherwise go forward in the execution of the trust for its benefit, unless they shall first be permitted or required to do so under some order or decree of this court.   In this condition of things, it is certain, whatever the course it may pursue, that nothing can be obtained by the bank.   If it acquiesces in this refusal of the trustees to act in its behalf, this is virtually, and by an unavoidable implication, a surrender and relinquishment of its claim.   Or if, instead of this, it should resort to the only alternative that is left, and seek to enforce, by the prosecution of some legal or equitable suit, the disposal of the property for and to its use, it would be sure to be defeated.   The estate cannot be disposed of by the trustees, except for the sole purpose of realizing means for the payment and discharge of liabilities of the plaintiff.   And no such liability can be shown or established by the bank; for it asserts no other than what is supposed to arise under an agreement made in violation of an express provision of law.   This is conclusive against it; for a party can never successfully prosecute

a suit or maintain an action, if his own illegal act, or an illegal contract in which he has participated, must be shown as a part of his case, or be given in evidence in support of the claim which he prefers. See to this point the cases referred to in the opinion of the court in *Gregg* v. *Wyman*, 4 Cush. 327 And because it is thus impossible for the bank to establish any legal liability against the plaintiff, it can never reach his land, or acquire any interest in it, or in the proceeds of its sale. It can therefore have no right to place itself between him and his trustees; to both of whom it is, under the circumstances shown, no other than a stranger; and prevent them from admitting him to have the possession of the estate to which they admit him to be justly entitled.

*Decree for the reconveyance prayed for.*